Brian A. Ertz (ISB No. 9960)
Eileen R. Johnson (ISB No. 9935)
ERTZ JOHNSON, LLP
P.O. Box 665
Boise, Idaho 83701
T: (208) 779-2929
F: (208) 416-6665
E: brian@ertzjohnson.com
    eileen@ertzjohnson.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **MARCELLA MILLER and SARAH MILLER**, | Case No. 1:20-cv-340-BRW |
| Plaintiffs, | **SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |
| v. | |
| **KENSINGTON APARTMENTS, LLC** *d.b.a* **KENSINGTON APARTMENTS AT NORTH POINTE; FOURSITE PROPERTY MANAGEMENT, LLC; and JOHN AND JANE DOES I-XX, whose identities are unknown**, | |
| Defendants. | |

COME NOW Plaintiffs Marcella Miller and Sarah Miller, by and through their counsel of record, Eileen R. Johnson and Brian A. Ertz of Ertz Johnson, LLP, and for causes of action against Defendants allege as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this action arises under the laws of the United States, namely 42 U.S.C. § 3604.

2. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action occurred in the City of Boise, Ada County, State of Idaho.

3. Based on the allegations set forth herein, the Court has personal jurisdiction over all defendants in this action.

## PARTIES

4. Plaintiff Marcella Miller (hereinafter "Marcella") is now, and at all times relevant herein was, a resident of Ada County, State of Idaho.

5. Plaintiff Sarah Miller (hereinafter "Sarah") is now, and at all times relevant herein was, a resident of Ada County, State of Idaho.

6. Defendant Kensington Apartments, LLC (hereinafter "Defendant Kensington") is a limited liability company doing business in Ada County, State of Idaho.

7. Defendant Kensington owns and controls Kensington at North Pointe ("Kensington"), a large apartment complex located at 7570 W. State Street in Boise, Idaho.

8. Defendant Foursite Property Management, LLC (hereinafter "Defendant Fousite") is a Utah limited liability company doing business in Ada County, State of Idaho.

9. Defendant Foursite provided property management services at Kensington at all times relevant herein.

10. Employees of Defendants, including Ashley Kelly, Jason Di Antonio, and Lisa Jones, were acting within the scope of their employment at all times herein.

11. The acts and omissions of Defendants' employees were made in furtherance of Defendants' business interests and pursuits.

12. Defendants John and Jane Does I-XX, whose identities are unknown, are

individuals or business entities that caused or contributed to the damages suffered by Plaintiffs, as alleged herein.

## STATEMENT OF FACTS

13. Marcella is handicapped as that term is defined by the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*

14. Marcella's medical provider prescribed two emotional support animals (hereinafter "ESA") for Marcella, Sweet Pea and Dalia.

15. Sweet Pea was a four-year-old feline.

16. Dahlia was a one-year-old feline.

17. Marcella's medical provider is in a position to know of Marcella's disability.

18. Marcella's medical professional signed a proof of need for ESA letter, dated April 26, 2018.

19. Sarah is handicapped as that term is defined by the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*

20. Sarah's medical provider prescribed two emotional support animals (hereinafter "ESA") for Sarah, Chesser and Diesel.

21. Chesser was a one-year-old feline.

22. Diesel was an eleven-year-old canine.

23. Sarah's medical provider is in a position to know of Sarah's disability.

24. Sarah's medical professional signed a proof of need for ESA letter, dated May 30, 2018.

25. On or about April 23, 2018, Marcella and Sarah visited Kensington as they were seeking a new residence.

26.     Marcella and Sarah (collectively "Plaintiffs") toured a three-bedroom apartment with Ashley Kelly.

27.     During the tour, Plaintiffs notified Ms. Kelly of the ESAs.

28.     Ms. Kelly responded that having the ESAs "[would not] be a problem."

29.     Back at Kensington's rental office, Plaintiffs spoke to Lisa Jones and Jason Di Antonio about the ESAs.

30.     Ms. Jones and/or Mr. Di Antonio contacted Defendant Kensington's corporate office regarding the ESAs.

31.     At the end of that call, Ms. Jones and/or Mr. Di Antonio informed Plaintiffs that four ESAs were too many.

32.     Ms. Jones and/or Mr. Di Antonio, on behalf of Defendants, denied Plaintiffs' requests for reasonable accommodation by refusing to make reasonable accommodations in Defendants' rules, practices, and or services when such accommodations would have been necessary to afford Plaintiffs equal opportunity to use and enjoy a dwelling at Kensington.

33.     Nevertheless, on April 30, 2018, the Plaintiffs submitted a rental application to Defendants.

34.     The application disclosed that both Plaintiffs receive monthly disability benefits.

35.     Marcella's and Sarah's rental application was approved, except for the animals.

36.     On or about April 30, 2018, Defendants' employees gave Plaintiffs forms to complete, including forms requesting the complete veterinary history of the four animals.

37.     Plaintiffs completed and submitted the forms to Defendants on or about May 8, 2018.

38. The forms included the proof of need letters signed by Plaintiffs' medical providers, establishing the medical necessity for Marcella to be able to live with Sweet Pea and Dalia, and for Sarah to be able to live with Cheshire and Diesel.

39. On or about May 14, 2018, Ms. Kelly called Plaintiffs' St. Luke's medical providers regarding Plaintiffs' ESAs.

40. On or about May 15, 2018, Ms. Kelly called St. Luke's again and spoke to a certified medical assistant who verified that Plaintiffs' medical providers had signed the proof of need letters.

41. Sometime between May 15, 2018 and May 21, 2018, Marcella contacted Defendants to inquire about the state of Plaintiffs' reasonable accommodation requests submitted to Defendants.

42. An employee of Defendants informed Marcella that Defendants could not approve Plaintiffs' reasonable accommodation requests because Defendants' employees had not spoken directly with each of Plaintiffs' providers.

43. On or about May 21, 2018, Marcella called St. Luke's and explained that Plaintiffs were waiting for approval to move into an apartment at Kensington but that Defendants would not approve Plaintiffs' request for reasonable accommodation until and unless Defendants spoke directly to Plaintiffs' medical providers to allow Defendants to verify that the providers had written and signed Plaintiffs' proof of need letters.

44. On or about May 22, 2018, St. Luke's records show that clinic staff had again spoken with Defendants' employees and again confirmed that Plaintiffs' proof of need letters had been drafted and signed by Plaintiffs' medical providers.

45. Defendants would only accept direct verbal confirmation by Plaintiffs' medical

providers of the veracity of the proof of need letters Plaintiffs had submitted to Defendants on or about May 8, 2018.

46. Confirmation from St. Luke's clinic staff would not suffice for Defendants.

47. On or about May 30, 2018, the Defendants allowed Plaintiffs to enter into a lease agreement (hereinafter "Lease") to rent an apartment at Kensington.

48. Defendants required Plaintiffs to complete and submit an "Animal Addendum" to the Lease agreement.

49. Section 45 of the Lease agreement contained a provision that, in the event a Resident brings a claim against Owner or their agents, Owner will be entitled to recover any attorney fees, costs, or damages in the event the agency fails to make a finding against Owner.

50. Section 15 of the animal addendum contains a clause stating that the Resident agrees to allow Owner to take animal(s) to a veterinary hospital for any medical emergency or to any humane society, shelter, or kennel if found unauthorized in the premises or community.

51. Plaintiffs were permitted to move into the apartment on or about June 2, 2018.

52. Plaintiffs resided in a hotel between May 9, 2018 and June 2, 2018.

53. On or about May 20, 2019, Plaintiffs filed separate administrative complaints with the U.S. Department of Housing and Urban Development (HUD) based on the allegations herein, which each Plaintiff withdrew on or about March 27, 2020.

54. Defendants do not subject non-disabled tenants to such delay in the application process.

55. By conditioning the approval of their request for reasonable accommodation on upon a phone call to her medical provider directly, rather than staff, Defendants made housing unavailable to Plaintiffs.

56. Defendants imposed discriminatory terms or conditions of rental against Plaintiffs due to Plaintiffs' disabilities.

57. Defendants failed to make reasonable accommodation of Plaintiff's handicaps and/or denied Plaintiffs' request(s) for reasonable accommodation.

58. Defendants interfered with Plaintiffs' exercise of Plaintiffs' Fair Housing rights.

59. Defendants' acts and omissions proximately caused Plaintiffs to incur unnecessary hotel costs between May 9, 2018 and June 2, 2018.

60. Defendants' acts and omissions proximately caused Plaintiffs to suffer unnecessary costs for storage of their personal belongings between May 9, 2018 and June 2, 2018.

61. Defendants' acts and omissions proximately caused Plaintiffs unnecessary costs for fast food and other convenience items while living in a hotel without access to a full kitchen.

62. Defendants' acts and omissions proximately caused Sarah to require a prescription allergy medication necessitated by Plaintiffs and their four ESAs extended residence in a single small hotel room between May 9, 2018 and June 2, 2018.

## CAUSES OF ACTION

### DISCRIMINATION ON THE BASIS OF "HANDICAP" IN VIOLATION OF THE FAIR HOUSING ACT AND ITS IMPLEMENTING REGULATIONS
### 42 U.S.C. §§ 3602 and 3604

63. The Plaintiffs reallege and herein incorporate by reference all allegations set forth in Paragraphs 1-62 above as though set forth *in haec verba*.

64. The Defendants have discriminated in the sale or rental of and otherwise made unavailable and denied, a dwelling on the basis of "handicap." 42 U.S.C. § 3604(f)(1).

65. The Defendants have discriminated in the terms, conditions and privileges of the sale or rental of a dwelling, and the services and facilities in connection therewith, on the basis of "handicap". 42 U.S.C. § 3604(f)(2).

66. The Defendants, personally or through others, refused to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford Plaintiffs' and other similarly situated individuals' equal opportunity to use and enjoy a dwelling. 42 U.S.C. § 3604(f)(3)(B).

67. The Defendants made, printed, or published a notice or statement with respect to the sale or rental of a dwelling that indicates a preference, limitation, and/or discrimination based on "handicap." 42 U.S.C. § 3604(c).

68. On information and belief, Defendants, acting personally or through others, continue to engage in discriminatory housing practices.

69. The Defendants' conduct is willful and intentional and exhibits reckless or callous indifference for the rights of the victims.

70. Because Plaintiffs have been injured by Defendants' discriminatory housing practices, Plaintiffs are aggrieved persons. 42 U.S.C. § 3602(i).

## DAMAGES AND BASES FOR RELIEF SOUGHT

71. The Plaintiffs reallege and herein incorporate by reference the allegations set forth in Paragraphs 1-70 above as though set forth *in haec verba*.

73. The Defendants' discriminatory conduct directly and substantially injured Plaintiffs by causing them to suffer loss of federal civil rights.

74. Accordingly, Plaintiffs are entitled to actual damages under the Fair Housing Act, 42 U.S.C. § 3613(c)(1).

75. The Defendants' violations of the Fair Housing Act directly and substantially injured Plaintiffs by causing exaggeration of pre-existing disabilities.

76. The Defendants' violations of the Fair Housing Act directly and substantially injured Plaintiffs by causing them to suffer lost housing opportunity, emotional distress with attendant physical symptoms, humiliation, embarrassment, and other damages.

77. Accordingly, Plaintiffs are entitled to non-economic damages.

78. In doing the acts of which Plaintiffs complain herein, Defendants acted with reckless and/or callous disregard of Plaintiffs' federally protected Fair Housing rights.

79. There now exists an actual controversy between the parties regarding Defendants' duties under federal and state laws.

80. Accordingly, Plaintiffs are entitled to declaratory relief under 42 U.S.C. § 3613(c)(1), 28 U.S.C. §§ 2201-2202, and Rule 57 of the Federal Rules of Civil Procedure.

81. Unless enjoined, Defendants will continue to engage in the unlawful acts and the pattern, and the practice of discrimination and unlawful conduct described herein.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs pray that the Court enter judgment against the Defendants as follows:

1. Declaring that Defendants' actions violate the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*;

2. Enjoining Defendants to make all necessary modifications to their policies, practices, and procedures to comply with the Fair Housing Act 42 U.S.C. § 3601 *et seq.*, as well as its implementing regulations provided at 24 C.F.R. § 100 *et seq*;

3. Enjoining Defendants to undergo training on the requirements of the Fair Housing Act 42 U.S.C. § 3601 *et seq.*, as well as its implementing regulations provided at 24 C.F.R. § 100 *et seq*;

4. Enjoining all unlawful practices alleged herein and imposing affirmative injunctive relief requiring Defendants, their partners, agents, representatives, employees, assignees, and all persons acting in concert with or participating with them, to take affirmative action to provide equal housing opportunities in compliance with the Fair Housing Act 42 U.S.C. § 3601 *et seq.*, as well as its implementing regulations provided at 24 C.F.R. § 100 *et seq*;

5. Awarding Plaintiffs compensatory damages under the Fair Housing Act, 42 U.S.C. § 3613(c)(1), in an amount to be determined at trial;

6. Awarding Plaintiffs non-economic damages in an amount to be determined at trial;

7. Awarding actual damages to Plaintiffs in amounts to be proven at trial;

8. Awarding reasonable attorneys' fees and costs to Plaintiffs, pursuant to 42 U.S.C. § 3613;

9. Awarding Plaintiffs an amount of $35,000.00 in the event that this lawsuit is not answered and defended; and

10. Awarding such other relief as the Court deems just and proper.

DATED this 30th Day of November 2020

> ERTZ JOHNSON, LLP
> **/s/ Eileen R. Johnson**
> Eileen R. Johnson
> *Attorneys for Plaintiffs*

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all issues properly tried by a jury in the above-entitled matter.

DATED this 30th Day of November 2020

                                                               ERTZ JOHNSON, LLP
                                                               **/s/ Eileen R. Johnson**
                                                               Eileen R. Johnson
                                                               *Attorneys for Plaintiffs*